UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

H&R BLOCK TAX SERVICES, LLC,

      Plaintiff,

  -against-            1:15-CV-0085 (LEK/CFH)

JUDY STRAUSS,

      Defendant.

## DECISION and ORDER

**I. INTRODUCTION**

This matter returns to the Court on Plaintiff H&R Block Tax Services, LLC's ("Plaintiff," or "H&R Block") Motion for a temporary restraining order seeking to hold Defendant Judy Strauss ("Defendant") in contempt of the Court's Memorandum-Decision and Order dated February 4, 2015. Dkt. Nos. 20 ("February Order"); 24 ("Motion"). On March 12, 2015, the Court held a hearing on the Motion and reserved judgment, permitting the parties to file memoranda of law on the issues of contempt and damages. See Dkt. Nos. 29 ("Transcript"); 30. Accordingly, Plaintiff submitted a Memorandum of law, Defendant responded, and Plaintiff filed a Reply. Dkt. Nos. 31 ("Memorandum"); 34 ("Response"); 35 ("Reply"). For the following reasons, the Motion is granted and Plaintiff is awarded damages and attorneys' fees and costs in the amount of $32,816.40.

**II. BACKGROUND**

The Court presumes the parties' familiarity with the facts and history of this case, and recites only those facts necessary to the resolution of the pending Motion.[1] For a complete statement of

---

[1] Plaintiff has also filed two additional Motions, see Dkt. Nos. 32; 33, which are currently pending before the Court. However, because those Motions are not relevant to or necessary to the disposition of the instant Motion, they will be addressed in a separate order and remain pending

Plaintiff's claims and the history of this case, reference is made to the Complaint and the February Order. Dkt. No. 1 ("Complaint"); Feb. Order.

Plaintiff is engaged "in the business of licensing others to operate tax return preparation offices under the H&R Block service mark." Compl. ¶ 5. In September 1984, Defendant entered into a Satellite Franchise Agreement (the "SFA") with Plaintiff's predecessor-in-interest[2] to enable Defendant to operate a tax return preparation office in Cobleskill, New York under the H&R Block service mark. Id. ¶ 1. The SFA automatically renewed every five years, and the parties continued their contractual relationship until 2014. See id. ¶ 2; see also Dkt. No. 1-1 ("Exhibit 1") ¶ 4. Prior to the expiration of the most recent five-year term, Plaintiff informed Defendant that it would not be renewing the 1984 version of the SFA; instead, Plaintiff offered Defendant a "current form" of the franchise agreement. Compl. ¶ 2. Defendant declined to renew the SFA in its current form, and the franchise relationship expired on September 1, 2014. Id. ¶¶ 2,12.

On January 26, 2015, Plaintiff filed a Motion for a temporary restraining order alleging that Defendant was in breach of the SFA. See Dkt. No. 5. The Court held a hearing and subsequently ordered, in relevant part, that Defendant "(1) refrain from directly or indirectly offering tax return preparation and related services in or within forty-five miles of Cobleskill, New York; [and] (2) refrain from solicitation of clients of the former H&R Block office in Cobleskill." Feb. Order at 12.

On March 3, 2015, Plaintiff filed the instant Motion alleging that Defendant was in contempt of the February Order by (1) preparing income taxes at a new location in Freehold, New York, which was less than forty-five miles from Cobleskill, New York; and (2) continuing to solicit clients

before the Court.

[2] The succession of rights and liabilities under the SFA is not in dispute.

in Cobleskill by advertising "tax services" on the sign outside of her Cobleskill office, running a newspaper advertisement indicating her services, and by receiving clients' materials in Cobleskill and then transporting them to Freehold to conduct the actual tax preparation. See Mot. At a subsequent hearing on March 12, 2015, Defendant (1) conceded that the Freehold office was within forty-five miles of Cobleskill, but asserted that she made a good faith effort to comply with the geographical restriction in the February Order; (2) conceded that she was preparing income tax services at her new location in Freehold; (3) asserted that the newspaper article had been prepared weeks before and she had no control over its publication; and (4) conceded that she had not removed or altered the sign in front of her Cobleskill office due to inclement weather, but agreed to do so immediately following the hearing. See Tr. at 9-11. Because the issue of damages had not been fully briefed, the Court reserved judgment on the Motion, and ordered the parties to brief the Court on the prevailing legal standards for contempt in a civil action and the basis for the damages sought. See id. at 13.

## III. DISCUSSION

Plaintiff seeks to hold Defendant in contempt of the February Order and to impose the following sanctions: (1) a one-year equitable extension of the covenant against competition and solicitation as set forth in the SFA; (2) lost profits from the revenue generated by Defendant's preparation of income taxes during the contempt period; and (3) attorneys' fees in connection with the contempt proceedings. See generally Mot.

### A. Contempt

Before addressing the issue of damages, the Court must first consider whether Defendant is in contempt of the February Order. Contempt is appropriate when "(1) the order the contemnor

3

failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 655 (2d Cir. 2004). Neither party has raised an issue with respect to the first element; thus, the Court considers only whether Plaintiff has met its burden in establishing the second and third elements.[3]

### 1. Clear and Convincing Proof of Noncompliance

The February Order provided, in relevant part, that Defendant must "refrain from directly or indirectly offering tax return preparation and related services in or within forty-five miles of Cobleskill, New York; [and] (2) refrain from solicitation of clients of the former H&R Block office in Cobleskill." Feb. Order at 12. At the hearing, Defendant's counsel conceded that Defendant had established a new office in Freehold, where she was performing income tax services, and that the Freehold office was less than forty-five miles from the Cobleskill location. See Tr. at 9-10, 12. Moreover, Defendant did not dispute that clients were dropping off their income tax information at Defendant's Cobleskill office, and those materials were then transferred to Freehold where the actual tax preparation service was performed. See id. at 9-10. Finally, Defendant also did not dispute that the sign in front of her Cobleskill office continued to display "tax services" and that subsequent to the February Order, a newspaper article ran in Cobleskill indicating that Defendant offered tax services. Id. at 8-9.

Defendant responds that Plaintiff's Memorandum relies in large part on the Chow Affidavit, which is comprised of inadmissible hearsay and thus fails to demonstrate a violation of the February

---

[3] At the hearing, Defendant raised an argument that the February Order's covenant against "solicitation" was not entirely clear; however, Defendant appears to have abandoned this argument, as it was not raised or referenced in her Response. Compare Tr. at 8, with Resp.

4

Order. See Resp. at 2-3. However, the Court finds it unnecessary to determine whether the Chow Affidavit is based on inadmissible hearsay because Defendant has failed to refute—or even address—her earlier concessions described *supra*. Therefore, Defendant's undisputed admissions that she continued to prepare income taxes in a location less than forty-five miles from Cobleskill, failed to remove the sign in front of her business advertising tax services, and took part in a newspaper advertisement that ran after the February Order was issued, are sufficient to support a finding that Plaintiff has provided clear and convincing evidence of Defendant's noncompliance.

    *2. Diligence*

Having found clear and convincing proof of Defendant's noncompliance, the Court next considers whether Defendant diligently attempted to comply in a reasonable manner with the February Order and thus should not be held in contempt. First, regarding the preparation of income taxes in Freehold, Defendant asserts that her efforts to comply with the geographic restriction were diligent because she selected the location "based upon the assurances of her landlord." Resp. at 4. Defendant further states that she "then learned, by observation of her odometer, that the shortest route from [her Cobleskill office] to her office in Freehold was 42.5 miles." Id.

Neither of these assertions suggests that Defendant exercised diligence in attempting to comply with the 45-mile restriction. Defendant has provided no evidence to indicate that her landlord was a reliable source of information for determining the distance between the two office locations, or even what information she was given by her landlord. However, even more importantly, that Defendant's vehicle's odometer confirmed that the two offices were less than forty-five miles apart negates a finding of diligence. Indeed, this assertion confirms that Defendant obtained first-hand, reliable evidence that the two offices were less than forty-five miles apart; yet,

5

Defendant did not cease preparing income taxes in Freehold despite personal knowledge that she was in violation of the February Order. Accordingly, the Court finds that Defendant did not attempt to diligently comply in a reasonable manner with respect to the geographic restriction.

With respect to the newspaper advertisement, Defendant asserts that it "was arranged for several weeks prior to the issuance of the Order" and that "[c]ancellation of the article was not, upon information and belief, within the purview of [Defendant]." Resp. at 4. The Court is not persuaded by Defendant's argument. Specifically, Defendant acknowledges that the newspaper article was arranged for prior to the February Order. See id. Defendant states that "upon information and belief" she was unable to cancel the article. Id. However, Defendant has not asserted that she actually attempted to cancel the article, or that she contacted the newspaper to seek modification to ensure compliance with the February Order. See id. In other words, Defendant's contention makes clear that she did not make any attempt to comply with the relevant provision of the February Order, and thus the Court finds that she did not exercise diligence with respect to the newspaper article.

Finally, with regard to the business sign outside of her Cobleskill office, Defendant conceded at the hearing that she had not removed or altered it as directed in the February Order. See Tr. at 10-11. Defendant stated that she had not removed the sign due to winter weather conditions but would remove it, or at least cover the part displaying "tax services," immediately following the hearing. Id. at 11. Plaintiff has not asserted a continued violation regarding the sign, and thus it appears that this issue has been resolved. See generally Mem.; Reply. Nonetheless, Plaintiff has met its burden in establishing a lack of diligence on the part of Defendant with respect to the covenants against non-competition and solicitation. Accordingly, the Court finds that Plaintiff has met its burden in demonstrating that Defendant violated the February Order.

**B. Sanctions**

Having found Defendant in contempt of the February Order, the Court now considers the appropriateness of the relief sought by Plaintiff.

*1. Equitable Extension of Covenants*

Plaintiff argues that it has suffered irreparable loss to its goodwill because Defendant's continued preparation of income taxes has, *inter alia,* prevented Plaintiff from properly transitioning past and future clients to its new franchise location in Cobleskill. Mem. at 5. Moreover, as the overwhelming majority of income taxes are prepared during the few months before April 15 of each year, and Plaintiff violated the Court's Order during a significant portion of the 2015 tax season, Plaintiff contends as a matter of equity that the covenants against competition and solicitation should be extended through the 2016 tax season to permit Plaintiff a proper opportunity to establish its new franchise location in Cobleskill. Id.

Defendant has not opposed this requested relief, and the Court is persuaded by Plaintiff's argument that a one-year extension of the covenants is necessary to ensure that Defendant complies with the February Order and to effectuate the purpose behind the covenants. Because Defendant failed to comply with the February Order during almost the entirety of the peak 2015 tax season, the Court finds that a one-year equitable extension of the covenants against competition and solicitation to cover the peak 2016 tax season is appropriate.

*2. Monetary Damages*

At the hearing, the Court asked Plaintiff what amount of damages it was seeking, and Plaintiff's counsel responded that courts have awarded *per diem* damages up to $3,000 per day; however, Plaintiff did not seek a specific amount at that time. See Tr. at 13. In its post-hearing

7

Memorandum, Plaintiff instead argues that a reasonable proxy of its damages is what Plaintiff would have earned had the SFA still been in place during the contempt period. Mem. at 6. Specifically, under the SFA, Plaintiff received royalties in the form of 40% of Defendant's gross revenue on income tax services; Plaintiff argues the royalty fee is an accurate measure of its monetary damages. Id. In her Response, Defendant argues that Plaintiff's request for $3,000 per day is unreasonably high and would impose an insurmountable financial hardship on Defendant. Resp. at 3. However, Defendant does not address Plaintiff's contention to measure damages pursuant to the SFA royalties provision. See generally id. The Court agrees with Plaintiff that the royalty payments are a reasonable measure of Plaintiff's monetary damages suffered as a result of Defendant's contempt.

As to the exact amount of damages, Defendant's counsel stated at the hearing that Defendant had generated approximately $48,000 in revenue preparing income tax returns during the contempt period. Tr. at 14. Pursuant to that statement, Plaintiff's Memorandum indicates that Plaintiff seeks $19,200, which is 40% of the purported $48,000 in revenue. Mem. at 6. However, Defendant's Response includes a profit and loss statement indicating that Defendant generated $43,000—not $48,000—during the contempt period. See Resp., Ex. A. Plaintiff's Reply does not challenge Defendant's evidence that her gross income during the relevant time period was $43,000. See generally Reply. Accordingly, the Court finds that Plaintiff is entitled to $40% of $43,000, which amounts to an award of $17,200 in damages, as compensation for lost royalties incurred during Defendant's violation of the Court's Order.

### 3. Attorneys' Fees

Finally, Plaintiff's attorneys seek a total of $31,232.70 in costs and fees for 90.25 hours of

work related to the contempt proceedings, pursuant to Local Rule 83.5. See Mem. at 7 (citing L.R. 83.5(a) ("A reasonable attorney's fee, necessitated by the contempt proceeding, may be included as an item of damages.")); see also Dkt. Nos. 31-2 ("Klarfeld Affidavit"); 31-4 ("Freeman Billing Summary"). Defendant asserts generally that Plaintiff is not entitled to attorneys' fees because it has not met its burden in establishing that her violations, even assuming she did violate the Order, were willful. Resp. at 5-6. However, Defendant has not specifically challenged the amount of attorneys' fees sought. See id.

a. Appropriateness of Attorneys' Fees

As to the appropriateness of awarding attorneys' fees, Defendant acknowledges that the Second Circuit, while not abrogating the wilfulness requirement, has more recently taken a less stringent view. See Resp. at 5-6; compare City of N.Y. v. Local 28, Sheet Metal Workers' Int'l Ass'n, 170 F.3d 279, 283 (2d Cir. 1999) ("The violation need not be willful, but it must be demonstrated that the contemnor was not reasonably diligent in attempting to comply.") (internal quotation omitted); Weitzman v. Stein, 98 F.3d 717, 719 (2d Cir. 1996) ("[W]hile willfulness may not necessarily be a prerequisite to an award of fees and costs, a finding of willfulness strongly supports granting them."), with Vuitton et Fils S.A. v. Carousel Handbags, 592 F.2d 126, 130-31 (2d Cir. 1979) (requiring a finding of willfulness before awarding costs of prosecuting contempt motion); N.Y. State Nat'l Org. for Women v. Terry, 952 F. Supp. 1033, 1044 (S.D.N.Y. 1997) (same). However, the Court need not determine the appropriate standard, because even under the more stringent standard, Defendant's contempt was wilful.

"Contempt is willful when the contemnor had actual notice of the order, could have complied, did not seek modification, and did not make a good-faith effort to comply." In re Lehman

Bros. Holdings Inc., 526 B.R. 481 (S.D.N.Y. 2014) (citing Bear U.S.A., Inc. v. Kim, 71 F. Supp. 2d 237, 249 (S.D.N.Y. 1999)). As discussed *supra*, Defendant did not make a good faith effort to comply with the non-competition covenant; indeed, her own efforts to measure the distance between the Freehold and Cobleskill offices revealed that she was in clear violation of the February Order, and she did not seek any form of modification from the Court. Similarly, with respect to the newspaper article and business sign, Defendant has not offered any persuasive arguments that she made a good faith effort to comply with the Court's Order or that she sought modification. Accordingly, the Court finds that attorneys' fees are appropriate in light of Defendant's willful violation of the February Order.

### b. Amount of Attorneys' Fees

Though Defendant has not challenged the amount of fees sought by Plaintiff, "'[t]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.'" Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) (quoting Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)). Furthermore, the Court has "discretion to determine . . . what constitutes a reasonable fee.'" Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2013) (citing LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 758 (2d Cir. 1998)). "[T]he lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" Id. (citing Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008) and Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551-52 (2010)). Though the lodestar is not always conclusive, it is presumptively reasonable absent extraordinary or rare circumstances. Id. at 166-67.

1. Reasonable Number of Hours

To calculate the lodestar, the Court must determine the reasonable number of hours spent on the case. See Dula v. Amereon, Ltd., No. 00 CIV. 8156, 2004 WL 1586410, at *4 (S.D.N.Y. July 15, 2004) (citing Weitzman v. Stein, 891 F.Supp. 927, 931 (S.D.N.Y. 1995)). In determining a reasonable number of hours, the Court "should consider not only the parties' submissions, but also 'its own familiarity with the case and its experience generally.'" Rudd v. Advance Bedding Corp., No. 95 CV 2099, 1997 WL 104683, at *4 (E.D.N.Y. Feb. 20, 1997) (quoting Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992)). The Court should reduce the time for which compensation is awarded for hours that were not "reasonably expended," for example because they are excessive or redundant. See Hensley, 461 U.S. at 434 ("The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.' Cases may be overstaffed, and the skill and experience of lawyers vary widely.") (internal citation omitted); see also Orchano v. Advanced Recovery, Inc., 107 F.3d 94, 98 (2d Cir. 1997). "In excluding hours that were not reasonably expended, 'the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'" Osterweil v. Bartlett, No. 09-CV-825, 2015 WL 1066404, at *8 (N.D.N.Y. Mar. 11, 2015) (quoting Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998)) (internal quotation marks omitted).

The party seeking an award for attorneys' fees must support such application with sufficiently detailed records of the nature of the work performed. See Lewis v. Coughlin, 801 F.2d 570, 577 (2d Cir. 1986). In the Second Circuit, attorneys seeking an award of fees from the Court must submit contemporaneous time records from which the Court can determine whether the hours expended were reasonable. N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136,

1148 (2d Cir. 1983) ("[A]ny attorney . . . who applies for court-ordered compensation in this Circuit for work done after the date of this opinion must document the application with contemporaneous time records. These records should specify, for each attorney, the date, the hours expended, and the nature of the work done."); see also Scott v. City of N.Y., 626 F.3d 130, 133 (2d Cir. 2010) ("Carey establishes a strict rule from which attorneys may deviate only in the rarest of cases."); Handschu v. Special Servs. Div., 727 F. Supp. 2d 239, 249 (S.D.N.Y. 2010) ("The records must be made contemporaneously, which is to say, while the work is being done or, more likely, immediately thereafter. Descriptions of work recollected in tranquility days or weeks later will not do.").

In support of its request for attorneys' fees, Plaintiff has submitted Affidavits from Peter J. Klarfeld ("Klarfeld") and Paul Freeman ("Freeman"), and accompanying billing summaries from their respective firms, Gray, Plant, Mooty, Mooty & Bennett P.A. ("GPM") and Freeman Howard, P.C. ("Freeman Howard"). Dkt. No. 31-3 ("Freeman Affidavit"); Klarfeld Aff.; Freeman Billing Summary. Neither Klarfeld nor Freeman asserts that the billing summaries provided were kept as contemporaneous time records, nor does either Affidavit address the timekeeping practices of either firm requesting fees. See generally Klarfeld Aff.; Freeman Aff. Furthermore, both Affidavits assert that the firms billed Plaintiff monthly for legal services, Klarfeld Aff. ¶ 8; Freeman Aff. ¶ 5, and the billing statements submitted appear to be copies of those monthly bills, rather than contemporaneous time records, see Klarfeld Aff. at 4-7; Freeman Billing Summary.

Monthly invoices for legal services are not sufficient to meet the standard for contemporaneous time records. See Chien v. Barron Capital Advisors LLC, No. 09-CV-1873, 2012 WL 1069167, at *1 (D. Conn. Mar. 29, 2012) (finding that monthly invoices that "describe[d] in detail work done on the case by specified individuals on particular dates during the preceding

month," "satisf[ied] some of Carey's requirements, . . . [b]ut . . . manifestly fail[ed] to qualify as 'contemporaneous time records,' as Carey also requires."). Consequently, because Plaintiff has not submitted contemporaneous time records as required in this Circuit, the Court will reduce the number of hours for which fees are awarded by 30%.[4] Cf. Serin v. N. Leasing Sys., Inc., 501 F. App'x 39, 41 (2d Cir. 2012) (finding that district court had not abused its discretion in "reduc[ing] the number of hours attributed to the relevant attorneys by thirty-five percent, in part due to the lack of contemporaneous records"); Monaghan v. SZS 33 Assos., L.P., 154 F.R.D. 78, 84 (S.D.N.Y. 1994) ("[C]ourts in this Circuit intermittently have seen fit to adopt roughly a 30% fee reduction rule for an attorney's failure to keep contemporaneous time records of their services.") see also Orshan v. Macchiarola, 629 F. Supp. 1014, 1019 (E.D.N.Y. 1986) ("In this case, contemporaneous time records have not been furnished. This deficiency would justify a 30% reduction as a sanction for noncompliance.") (citing Hensley, 461 U.S. at 438 n.13 and Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10, 749 F.2d 1000, 1008 (2d Cir. 1984)).

After reviewing Plaintiff's attorneys' billing summaries, the Court further finds that the number of hours billed—90.25 hours—are excessive for a straightforward contempt proceeding. See Auto. Lift Inst., Inc. v. Backyard Buddy, Inc., No. 08-CV-1313, 2010 WL 2569237, at *1 (N.D.N.Y. June 24, 2010) (finding 38.1 hours spent on a contempt proceeding reasonable) (citation omitted); Can. Dry Del. Valley Bottling Co. v. Hornell Brewing Co., No. 11 CIV. 4308, 2013 WL 6171660, at *4 (S.D.N.Y. Nov. 25, 2013) (reducing award of attorneys' fees where "[n]either the scope nor the complexity of the issues presented on the motion to enforce justifie[d] the number of

---

[4] Reductions will be deducted proportionately from the number of hours reported for each attorney or paralegal.

13

personnel who billed time on that motion."); McGhee v. Apple-Metro, Inc., No. 03 CIV. 1870, 2005 WL 1355105, at *2 (S.D.N.Y. June 7, 2005) (reducing hours for a "garden-variety discovery-sanction motion" from 140 hours to "a still fairly generous forty hours"). Furthermore, certain entries on Plaintiff's attorneys' billing summaries contain only vague references to conference calls, emails, or research, without any further detail or context, and are therefore impermissibly vague. See, e.g., Klarfeld Aff. at 4 ("02/13/15 . . . email to Client."), 5 ("02/24/15 . . . research"); Freeman Billing Statement at 1 ("02/20/15 . . . Telephone conferences (2) with Attorney Greg Schaaf . . . 02/25/15 . . . Review e-mails"); see also Tito, 2014 WL 1092845, at *4 (finding time records that "include billing for emails between co-counsel, performing research, reviewing files, and emailing [a] client," but "contain no information as to the purpose of the emails, the issues discussed between co-counsel, or the issues researched and their relation to the current matter" to be impermissibly vague); N.Y. State Teamsters Conference Pension & Ret. Fund v. United Parcel Serv., Inc., No. 98 CV 1902, 2004 WL 437474, at *3 (N.D.N.Y. Feb. 27, 2004) ("[E]ntries such as 'consultation, preparations for litigation' [are] 'woefully inadequate and vague.'") (citation omtitted). Consequently, the Court finds that a further 5% reduction to the number of hours is warranted.

### 3. Reasonable Hourly Rates

As part of the lodestar, the Court must also determine a reasonable hourly rate. "As the movant, it is Plaintiff's 'burden to establish the prevailing market rate.'" Jimico Enters., Inc. v. Lehigh Gas Corp., No. 07-CV-0578, 2014 WL 1239030, at *6 (N.D.N.Y. Mar. 25, 2014) (citations omitted). Furthermore, pursuant to the Second Circuit's "forum rule," "'the hourly rates employed in the district in which the reviewing court sits'" should be used in calculating a presumptively

14

reasonable fee. Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr., 652 F.3d 277, 290 (2d Cir. 2011) (quoting Simmons v. N.Y. City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009)). In order to overcome the presumption that the forum district's rates are reasonable, "a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." Simmons, 575 F.3d at 175 (2d Cir. 2009).

In determining what constitutes a reasonable hourly rate, a court should "consider factors including, but not limited to,"

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

Osterweil, 2015 WL 1066404, at *5 (quoting Arbor Hill, 522 F.3d at 184).

In its request for attorneys' fees, Plaintiff offers broad assertions that the hourly rates of its attorneys were reasonable, see Mem. at 8; Klarfeld Aff. ¶ 7; Freeman Aff. ¶ 4, yet does not reference a prevailing market rate, in the Northern District or any other district. Furthermore, though Plaintiff notes its long-standing relationship with GPM, and the need to prosecute this action efficiently as justification for engaging Klarfeld's assistance, see Klarfeld Aff. ¶ 6; Mem. at 8, it makes no arguments as to the reasonableness of using the out-of-district rates of a Washington, D.C. law firm. Though Plaintiff "cannot be faulted for wanting to retain counsel with the best possible reputation, it is not [Defendant's] responsibility to compensate for such counsel based on higher out-of-district

15

rates where [Plaintiff] has not shown that they were likely to produce a substantially better result than competent counsel in the [Northern] District would produce for less . . . money." Simmons, 575 F.3d at 177. Consequently, pursuant to the forum rule, the Court will use the prevailing rates in the Northern District to calculate a presumptively reasonable fee.

Recent cases in the Northern District have upheld hourly rates between $250 and $345 for partners; between $120 and $200 for associates; and between $80 and $90 for paralegals. See Berkshire Bank v. Tedeschi, No. 11-CV-0767, 2015 WL 235848, at *3 (N.D.N.Y. Jan. 16, 2015) (Kahn, J.) (citing cases); see also Deferio v. Bd. of Tr. of State Univ. of N.Y., No. 11-CV-0563, 2014 WL 295842, at *5 (N.D.N.Y. Jan. 27, 2014) ("The Second Circuit recently indicated that a trial court did not abuse its discretion when it found that '[t]he prevailing hourly rates in [the Northern District of New York] . . . are $210 per hour for an experienced attorney, $150 per hour for an attorney with more than four years of experience, $120 per hour for an attorney with less than four years' experience, and $80 per hour for paralegals.'") (citing Lore v. City of Syracuse, 670 F.3d 127, 175 (2d Cir. 2012)).

Plaintiff's attorneys billed time at the following hourly rates: $467/hour for Klarfeld, a partner at GPM in Washington, D.C. with over thirty-five years of experience in franchise law, Klarfeld Aff. ¶¶ 3, 10; $216/hour for Julia Colarusso ("Colarusso"), an associate at GPM who graduated law school in 2010, id. ¶ 11; $136/hour for Tracy Castillo ("Castillo"), a paralegal at GPM, id. ¶ 12; $300/hour for Paul Freeman ("Freeman"), a partner at Freeman Howard specializing in complex commercial litigation with over twenty-five years of practice experience, Freeman Aff, ¶¶ 2, 3, 7; $300/hour for Matthew Griesemer ("Griesemer"), a partner at Freeman Howard who graduated from law school in 2007, id. ¶ 7; and $220/hour for Aaron DePaolo ("DePaolo"), an

16

associate at Freeman Howard, id.

The Court finds that Freeman's hourly rate is reasonable. As discussed *supra*, experienced partners in the Northern District are typically awarded hourly rates around $300. However, the rates charged for the other two attorneys at Freeman Howard are either excessive or unsubstantiated. Freeman Howard billed the same rate for Griesemer, an attorney with less than eight years of experience, as for Freeman, who has over twenty years' experience. See Freeman Aff. ¶ 7. Plaintiff provides no justification for this high rate, other than to note that Griesemer is a partner in the firm. Despite this fact, the Court finds his hourly rate excessive. See Deferio, 2014 WL 295842, at *8 ("[I]t would be unreasonable to expect a client to pay an attorney with (at the time) approximately five years of litigation experience . . . at the same rate customarily charged by an attorney in this District with more than 20 years of litigation experience"); see also Osterweil, 2015 WL 1066404, at *7 (finding that $200 was a reasonable hourly rate for attorneys with nine to ten years' experience and "extensive experience in federal appellate litigation."); Chem RX Pharmacy Servs., LLC v. Leatherstocking Healthcare, LLC, No. 13-CV-209, 2014 WL 5107021, at *2 (N.D.N.Y. Oct. 10, 2014) (approving hourly rates of $220 and $225 for attorneys with between five and seven years of experience, as well as judicial clerkships). Consequently, in consideration of his experience level and status as a partner, the Court will approve an hourly rate of $225 for Griesemer. As for DePaolo, Plaintiff has provided no information about his education or experience level, leaving the Court with no way to determine whether the rate charged for his work is reasonable. See Wong v. Hunda Glass Corp., No. 09 CIV. 4402, 2010 WL 3452417, at *3 (S.D.N.Y. Sept. 1, 2010) ("To determine the currently prevailing reasonable rate, courts look first to the lawyer's level of experience."). Therefore, the Court will approve an hourly rate of $120/hour for DePaolo,

commensurate with the hourly rate that has been found reasonable for associates with less than four years' experience.

The Court also finds that the hourly rates billed by GPM exceed the reasonable rates that have been approved in the Northern District without sufficient justification for such higher rates. Klarfeld's Affidavit notes his thirty-five years of experience and expertise, Klarfeld Aff. ¶ 10, and Plaintiff states that Klarfeld was consulted on this case in order to make it more efficient, Mem. at 9. However, Plaintiff does not argue that this litigation was especially complex, nor does Plaintiff or Klarfeld attempt to justify the use of out-of-district rates. See generally Mem.; Klarfeld Aff. In light of his experience and the expedited nature of this contempt proceeding, the Court will approve an hourly rate of $345 for Klarfeld, commensurate with the upper-level of reasonable hourly rates for experienced attorneys in the Northern District. Similarly, Colarusso's hourly rate is higher than the $150/hour that courts in this district have found reasonable for an associate with more than four years' experience. See, e.g., Osterweil, 2015 WL 1066404, at *8; Deferio, 2014 WL 295842, at *5; Zhou v. State Univ. of N.Y. Inst. of Tech., No. 08-CV-0444, 2014 WL 7346035, at *2 (N.D.N.Y. Dec. 23, 2014). Since Plaintiff has provided no justification for a higher hourly rate or the use of out-of-district rates for Colarusso, the Court will award $150/hour for Colarusso's hours. Plaintiff similarly provides no justification for the high rate billed for paralegal time, and in fact does not even mention Castillo's level of education or experience. See Klarfeld Aff. ¶ 12. Consequently, the Court will award only $80/ hour for paralegal time, commensurate with the reasonable rates established in this District.

After reducing the total number of hours billed by 35%, and accounting for the reasonable

rates awarded, the Court awards Plaintiff $15,616.40 in fees and costs.[5]

IV. **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Plaintiff H&R Block Tax Services, LLC's Motion (Dkt. No. 24) for a temporary restraining order seeking to hold Defendant Judy Strauss in contempt of the Court's Memorandum-Decision and Order dated February 4, 2015 is **GRANTED**; and it is further

**ORDERED**, that the covenants against competition and solicitation described in the Court's Memorandum-Decision and Order dated February 4, 2015 be equitably extended to run for one year from the date of this Decision and Order; and it is further

**ORDERED**, that Plaintiff be awarded $17,200 in compensatory damages; and it is further

**ORDERED**, that Plaintiff be awarded $15,616.40 in attorneys' fees and costs; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: July 07, 2015
Albany, NY

_/s/ Lawrence E. Kahn_
Lawrence E. Kahn
U.S. District Judge

---

[5] This figure reflects $111.80 in costs, see Freeman Billing Summary at 2, which the Court finds reasonable.