UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

H&R BLOCK TAX SERVICES, LLC,

                  Plaintiff,

     -against-                            1:15-CV-0085 (LEK/CFH)

JUDY STRAUSS,

                  Defendant.

# MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

Plaintiff H&R Block Tax Services, LLC commenced this breach of contract action against Defendant Judy Strauss. Dkt. No. 1 ("Complaint"). Presently before the Court is Plaintiff's Motion to Enforce the Parties' Settlement Agreement. Dkt. No. 64 ("Settlement Motion"). Plaintiff seeks to enforce the settlement agreement that it purportedly entered into with Defendant. Defendant opposes the Settlement Motion. Dkt. No. 74 ("Response"). Plaintiff filed a reply. Dkt. No. 78 ("Reply").[1] For the reasons that follow, the Settlement Motion is denied.

## II.     BACKGROUND

### A.  The Underlying Dispute

The Court presumes the parties' familiarity with the facts and history of this case, and recites only those facts necessary to the resolution of the pending motion.

---

[1]  In its Reply, Plaintiff asks the Court to reject Defendant's Response because it was ultimately filed after the Court had granted Defendant numerous extensions on the filing deadline. Reply at 8–10. However, as Plaintiff acknowledges, Defendant submitted her Response in compliance with the November 13, 2015 deadline set by the Court. Dkt. No. 73. Plaintiff does not suggest that the Court lacked authority to grant the extensions in question. Therefore, the Court will consider Defendant's Response.

For many years, Plaintiff has engaged "in the business of licensing others to operate tax return preparation offices under the H&R Block service mark." Compl. ¶ 5. In September 1984, Defendant entered into a Satellite Franchise Agreement (the "SFA") with Plaintiff's predecessor-in-interest[2] to enable Defendant to operate a tax return preparation office in Cobleskill, New York under the H&R Block service mark. Id. ¶ 1. The SFA automatically renewed every five years, and the parties continued their contractual relationship until 2014. See id. ¶ 2; see also Dkt. No. 1-1 ("Exhibit 1") ¶ 4. The SFA provided that, for one year after termination of the agreement, Defendant would be forbidden from soliciting clients of her former H&R Block office and could not compete in the tax preparation business with Plaintiff in or within forty-five miles of Cobleskill, New York. Compl. ¶ 9. Prior to the expiration of the most recent five-year term, Plaintiff informed Defendant that it would not be renewing the 1984 version of the SFA; instead, Plaintiff offered Defendant a "current form" of the franchise agreement. Id. ¶ 2. Defendant declined to renew the SFA in its current form, and the franchise relationship expired on September 1, 2014. Id. ¶¶ 2,12.

On January 26, 2015, Plaintiff filed a Motion for a Temporary Restraining Order alleging that Defendant was in breach of the SFA. See Dkt. No. 5 ("TRO Motion"). The Court held a hearing and subsequently ordered, in relevant part, that Defendant "(1) refrain from directly or indirectly offering tax return preparation and related services in or within forty-five miles of Cobleskill, New York; [and] (2) refrain from solicitation of clients of the former H&R Block office in Cobleskill." Dkt. No. 20 ("February Order") at 12.

---

[2]   The succession of rights and liabilities under the SFA is not in dispute.

On March 3, 2015, Plaintiff moved to hold Defendant in contempt of the February Order, alleging that she violated the order by (1) preparing income taxes at a new location in Freehold, New York, which is less than forty-five miles from Cobleskill, New York; and (2) continuing to solicit clients in Cobleskill. See Dkt. No. 24-13 ("Contempt Motion") at 1. On July 7, 2015, the Court granted Plaintiff's motion, holding Plaintiff in contempt of the February Order, ordering that the covenants against competition and solicitation outlined in the February Order be extended to July 7, 2016, and awarding Plaintiff $17,200 in compensatory damages for revenues received by Defendant from her tax preparation business and $15,616.40 in attorneys' fees and costs. Dkt. No. 54 ("July Order") at 19.

### B.  The Alleged Settlement Agreement

Prior to issuing its July Order, the Court had sent this case to mandatory mediation in order to encourage settlement. Dkt. No. 42. The parties chose Professor Michael J. Hutter to serve as the mediator. Dkt. No. 44. At the July 21, 2015 mediation session, which was attended by Plaintiff's counsel, Defendant, and Gregory Schaaf, Defendant's counsel at the time, the parties agreed on the general terms that would be included in any settlement agreement. Settlement Mot. at 3. The elements of the potential settlement included:

> (1) an extension of the duration of the covenants against competition and solicitation contained in the SFA; (2) payment of royalties and attorneys' fees by Ms. Strauss to Block; (3) dismissal of the counterclaim that Ms. Strauss filed in this action; and (4) provision for liquidated damages and attorneys' fees in the event of Ms. Strauss's future violation of the consent judgment.

Id. Following the mediation session, the parties agreed to exchange settlement proposals specifying the precise terms of the agreement. Id.

3

About one week after the mediation session, on July 29, 2015, Plaintiff's co-counsel emailed Plaintiff's final settlement proposal to Schaaf. Id. Plaintiff's proposal largely tracked the general settlement terms to which the parties had agreed at the mediation session; the only difference was that Plaintiff's counsel asked for $13,000 in additional royalties from Defendant based on tax return preparation revenue she had received after termination of the SFA. Id. After requesting and receiving clarification from Plaintiff's counsel concerning the additional royalties, Schaaf called Plaintiff's counsel on August 3, 2015, leaving a telephone message that Defendant was accepting the settlement terms. Id. at 4. Schaaf also asked Plaintiff's counsel to prepare formal settlement documents that Defendant would then sign. Id. Later that day, Schaaf spoke to Plaintiff's counsel on the phone, confirming Defendant's acceptance of the settlement terms contained in the email Plaintiff's counsel sent to Schaaf. In this conversation, the parties also agreed that the settlement would include "mutual general releases" of claims, and Schaaf again asked Plaintiff's counsel to prepare the formal settlement documents. Id.

On August 5, 2015, Schaaf filed a letter with the Court stating that Defendant had agreed to Plaintiff's settlement terms and that Plaintiff's counsel would prepare the settlement documents. Id.; Dkt. No. 58. The next day, the Court noted that it had received Schaaf's letter and asked the parties to finalize the settlement agreement. Dkt. No. 60.

On August 12, 2015, Plaintiff's counsel emailed Schaaf the formal settlement documents, which included a written settlement agreement. Settlement Mot. at 5; Dkt. No. 64-10 at 2–9 ("Draft Settlement Agreement"). The Draft Settlement Agreement set out the terms that Schaaf had agreed to on behalf of Defendant. Settlement Mot. at 5. In addition, it contained a merger clause stating that "[t]his Settlement Agreement constitutes the entire, full, and complete

agreement of the Parties concerning its subject matter and supersedes all prior negotiations,

understandings, and agreements between the Parties concerning the same subject matter." Draft

Settlement Agreement ¶ 12.

Despite Schaaf's statement to Plaintiff's counsel that Defendant was willing to accept the

settlement, Defendant never signed the formal settlement documents. Settlement Mot. at 5. On

August 24, 2015, Schaaf informed Plaintiff's counsel that he had been discharged by Defendant,

who now took the position that she had never authorized Schaaf to agree to the settlement on her

behalf. Id.

As a result of Defendant's failure to sign the settlement documents, Plaintiff filed the

Settlement Motion, asking the Court to enforce the settlement purportedly reached between the

parties. Id. at 1. Plaintiff argues that Defendant authorized Schaaf to accept Plaintiff's settlement

terms, and that the settlement agreement allegedly reached by the parties is contractually binding.

Id. Defendant responds by arguing that she never gave Schaaf authorization to settle on her

behalf, and that the settlement to which he, without authorization, agreed is unenforceable as a

matter of contract law. Resp. at 2, 7–10.

III.    DISCUSSION

"A district court has the power to enforce summarily, on motion, a settlement agreement

reached in a case that was pending before it." Comm'n Express Nat'l, Inc. v. Rikhy, No. 03-CV-

4050, 2006 WL 385323, at *2 (E.D.N.Y. Feb. 17, 2006) (quoting Meetings & Expositions, Inc.

v. Tandy Corp., 490 F.2d 714, 717 (2d Cir. 1974)). "An agreement to end a lawsuit is construed

according to contract principles." United States v. Sforza, 326 F.3d 107, 115 (2d Cir. 2003). The

Court must therefore decide whether, despite the failure to execute formal settlement documents,

the parties' communications with each other, including Schaaf's telephone calls to Plaintiff's

counsel regarding Defendant's alleged acceptance of the settlement, were sufficient to create a

binding settlement agreement.

The Second Circuit has outlined four factors to be considered in determining whether the

parties intended to be bound by an oral agreement despite the failure to execute formal settlement

documents. Winston v. Mediafare Entm't Corp., 777 F.2d 78, 80 (2d Cir. 1985). The factors are:

> (1) whether there has been an express reservation of the right not to
> be bound in the absence of a writing; (2) whether there has been
> partial performance of the contract; (3) whether all of the terms of the
> alleged contract have been agreed upon; and (4) whether the
> agreement at issue is the type of contract that is usually committed to
> writing.

Id. No single factor is dispositive, Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d 320, 323

(2d Cir. 1997), but the first factor is particularly important, because where "there is a writing

between the parties showing that [one party] did not intend to be bound . . . a court 'need look no

further than the first factor,'" RKG Holdings, Inc. v. Simon, 182 F.3d 901, 901 (2d Cir. 1999)

(quoting Arcadian Phosphates, Inc. v. Arcadian Corp., 884 F.2d 69, 72 (2d Cir. 1989)).

In its Settlement Motion, Plaintiff claims that the agreement allegedly reached between

the parties satisfies the four Winston factors. Plaintiff argues that Defendant, through Schaaf,

unequivocally conveyed her acceptance of all material terms of the settlement agreement as

outlined in the July 29, 2015 email sent by Plaintiff's counsel to Schaaf. Settlement Mot. at 8.

This acceptance occurred, according to Plaintiff, when Schaaf called Plaintiff's counsel on

August 3, 2015, and indicated his client's assent to the settlement. Id. Plaintiff stresses that

neither Defendant nor Schaaf ever expressly reserved the right to reject or modify the settlement

before the execution of the formal settlement agreement, thereby showing Defendant's intent to

be bound by the oral acceptance communicated to Plaintiff's counsel. Id. at 8–9; Resp. at 6. The

Court will address each of the Winston factors in turn.

### A. Express Reservation

While Plaintiff is correct that the neither Defendant nor Schaaf ever explicitly reserved

the right not to be bound in the absence of a writing, this does not end the inquiry. The Second

Circuit has given great weight to the terms of a draft settlement agreement in determining

whether the drafting party intended to be bound absent a signed writing. See Ciaramella, 131

F.3d at 324 ("We must give . . . statements [in proposed settlement agreements] considerable

weight, as courts should avoid frustrating the clearly-expressed intentions of the parties."). In its

discussion of this Winston factor, Plaintiff never mentions the terms of the Draft Settlement

Agreement that its own lawyers drafted, and yet these terms plainly show Plaintiff's intention not

to be bound by oral agreements reached prior to the execution of formal settlement documents.

As noted above, the Draft Settlement Agreement prepared by Plaintiff's counsel

contained a merger clause, which stated that "[t]his Settlement Agreement constitutes the entire,

full, and complete agreement of the Parties concerning its subject matter and supersedes all prior

negotiations, understandings, and agreements between the Parties concerning the same subject

matter." Draft Settlement Agreement ¶ 12. In Ciaramella, the Second Circuit found a similarly

worded merger clause to be "persuasive evidence that the parties did not intend to be bound prior

to the execution of a written agreement." 131 F.3d at 324. Courts in this circuit have consistently

found the existence of such a merger clause in a draft settlement agreement to be strong evidence

that the drafting party—here, Plaintiff—did not intend to be bound by agreements reached prior

to the execution of formal settlement documents. See, e.g., Balaban-Krauss v. Exec. Risk Indem., Inc., No. 13-CV-282, 2014 WL 292728, at *3 (N.D.N.Y June 27, 2014). Thus, the merger clause in Plaintiff's Draft Settlement Agreement is persuasive evidence that Plaintiff did not view the settlement as complete until both parties signed the written agreement.

Plaintiff's Draft Settlement Agreement contained several other indications that Plaintiff did not consider itself bound by an agreement reached prior to the execution of the settlement documents. For example, the preamble of the draft agreement provided that "[t]his Settlement Agreement and Mutual Release . . . is entered into as of this _____ day of August, 2015, by and between [the parties]." Draft Settlement Agreement at 2. Presumably, the blank space in this clause was to be filled in with the date on which the settlement agreement was signed by both parties, and not the date on which Schaaf communicated Defendant's acceptance of the settlement to Plaintiff's counsel. The court in Ciaramella found that a similar provision in a settlement agreement was evidence of an intent not to bound before the execution of the written agreement, see 131 F.3d at 324, and courts in this circuit have similarly construed preambles of this type, see, e.g., Sprint Commc'ns Co. L.P. v. Jasco Trading, Inc., 5 F. Supp. 3d 323, 334–35 (E.D.N.Y. 2014).

Moreover, the Draft Settlement Agreement explicitly tied Defendant's obligations under the agreement to the date of its execution. Paragraph 12(b) of the agreement stated that Defendant would be required to pay Plaintiff $46,264.04 "[w]ithin ninety (90) days of the entry of the Consent Judgment." Draft Settlement Agreement ¶ 12(b). In other words, Defendant's contractual obligations under the settlement agreement would not begin until the Court entered the proposed consent judgment, which in turn would not happen until the parties executed the

Draft Settlement Agreement. Plaintiff's decision to link Defendant's contractual obligations to the date of execution of the formal settlement documents is a strong indication that Plaintiff did not consider the agreement complete until the formal documents were signed. See Ciaramella, 131 F.3d at 324 (finding an intent not to be bound prior to the execution of the written settlement agreement when "execution was necessary to trigger either parties' obligations"); Sprint Commc'ns Co. L.P., 5 F. Supp. 3d at 334 (the parties could not have bound themselves to the settlement agreement before execution in part because of "the presence of substantive conditions discussing rights and obligations that either materialize or disappear at a particular time that is indexed to the date of execution"); EEOC v. Beauty Enterprises, Inc., No. 01-CV-378, 2007 WL 3231692, at *5 (D. Conn. Oct. 31, 2007) ("[T]he language of the draft [settlement agreement] conditioned many of the parties' duties and the timing of performance of those duties on the court's entry of the Consent Decree, which could not occur until the parties approved, signed and presented a final draft Decree to the court.").

Plaintiff argues that Defendant's intent to be bound in the absence of a writing can be inferred from Schaaf's decision to inform the Court that the parties had reached a settlement. Settlement Mot. at 9; see also Dkt. No. 58 ("Defendant's Letter to Court Regarding Settlement"). But Plaintiff offers no reason to construe Schaaf's filing as a statement that the parties meant to immediately bind themselves to the agreement without a formally executed writing. Indeed, the Court, upon receiving Defendant's notice that a settlement had been reached, noted that it had been "advised by counsel that this action has been settled, or *is in the process of being settled.*" Dkt. No. 60 (emphasis added). Thus, the Court cannot infer an intent to be bound to the oral settlement agreement from Defendant's notice to the Court.

Accordingly, because the Draft Settlement Agreement prepared by Plaintiff indicates that

Plaintiff did not consider itself bound by any agreement reached prior to the execution of the

formal settlement documents, the first Winston factor weighs heavily against enforcement.

**B. Partial Performance**

"A second factor for consideration is whether one party has partially performed, and that

performance has been accepted by the party disclaiming the existence of an agreement."

Ciaramella, 131 F.3d at 325. "Partial performance requires some actual performance of the

contract," and the party attempting to enforce the agreement must have conferred something of

value on the party disclaiming the agreement. P.A. Bergner & Co. v. Martinez, 823 F. Supp. 151,

157 (S.D.N.Y. 1993). Plaintiff argues that this factor favors enforcement of the alleged

agreement because the parties have "ceased active litigation of the case . . . as the result of Mr.

Schaaf's report to the Court on August 5, 2015 that Ms. Strauss had accepted the settlement."

Resp. at 8.

While several courts in this circuit have found partial performance where both parties

stopped pursuing litigation in reliance on an alleged settlement agreement, those courts have also

held that this kind of partial performance "can be counterbalanced by a lack of any performance

of any of the terms of the settlement agreement, such as a payment of the settlement amount."

Sprint Commc'ns Co. L.P., 5 F. Supp. 3d. at 335–36. Here, on the record before the Court,

neither Plaintiff nor Defendant has performed any of the terms of the settlement agreement.

Therefore, this factor weighs neither for nor against Plaintiff's attempt to enforce the alleged

settlement agreement. See Conway v. Brooklyn Union Gas Co., 236 F. Supp. 2d 241, 250

(E.D.N.Y. 2002) (finding that, where "no money exchanged hands" but active litigation ceased, the second Winston factor "did not tip the balance in either direction").

## C.  Terms of the Agreement

The third Winston factor requires the Court to determine whether the parties agreed on all material terms of the settlement. Alvarez v. City of New York, 146 F. Supp. 2d 327, 336 (S.D.N.Y. 2001). The parties do not dispute that there were no material differences between the settlement agreement outlined in the email sent by Plaintiff's counsel to Schaaf on July 29, 2015 and the Draft Settlement Agreement prepared by Plaintiff. Moreover, the Court can find no substantive differences between the two agreements. Compare Dkt. No. 64-3 ("July 29 Email"), with Draft Settlement Agreement. Therefore, this factor militates in favor of enforcement.

## D.  Whether the Agreement is One Usually Committed to Writing

The final Winston factor asks whether the agreement at issue is of the type usually committed to writing. Winston, 777 F.2d at 83. "Settlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court." Ciaramella, 131 F.3d at 326; see also Gaul v. Chrysler Fin. Servs. Ams., LLC, No. 13-CV-433, 2014 WL 1466491, at *7 (N.D.N.Y. Apr. 15, 2014) ("[T]he type of document here involved, the release of legal claims against one party in exchange for some valuable consideration, is the type of agreement normally committed to writing."). "Where . . . the parties are adversaries and the purpose of the agreement is to forestall litigation, prudence strongly suggests that their agreement be written in order to make it readily enforceable, and to avoid still further litigation." Winston, 777 F.2d at 83.

Plaintiff argues that this factor favors enforcement because the terms of the settlement were not so complex that one would expect them to be put in writing before they became

binding. Reply at 7. Specifically, Plaintiff notes that the material terms of the settlement had

already been reduced to writing in the email sent by Plaintiff's counsel to Schaaf on July 29,

2015. Id. Plaintiff also emphasizes that the settlement terms largely tracked the relief granted by

the Court in its July Order, id., and that therefore the "parameters of the settlement were straight-

forward and well understood by the parties," id. at 8.

Plaintiff cites no case law to support its claim that the existence of emails embodying the

essential terms of the agreement shows that the agreement was not so complex that one would

expect it to be put in writing. The problem with this argument is that courts in this circuit have

regularly refused to enforce alleged settlement agreements without a signed writing, even where

the parties ultimately agreed on all material terms and those terms had been laid out in

communications between the parties. See, e.g., Balaban-Krauss, 2014 WL 2927289, at *4

(finding that the type of settlement agreement at issue is usually committed to writing even

though the parties had exchanged multiple emails regarding the terms of the agreement). Plaintiff

likewise fails to bring to the Court's attention any authority for its assertion that the similarity

between the relief ordered by the Court in its July Order and the terms of the purported

settlement agreement tips in favor of enforcement.

Turning to the terms of the agreement itself, the Court finds that they are sufficiently

complex that they would typically be put in writing before becoming binding. In Winston itself,

the court was faced with a four-page long settlement agreement requiring one party to pay the

other $62,500 dollars over a period of several years based on a percentage of earnings. 777 F.2d

at 83. The court found that this agreement was of the type usually committed to writing. Id. In

this case, the Court is confronted with a settlement agreement in which Defendant would be

required to pay Plaintiff $46,262.04 in addition to forty percent of any revenues she obtained if

she continued to violate the covenants against competition and solicitation. Draft Settlement

Agreement ¶ 2. Moreover, the Draft Settlement Agreement is eight pages long. The Court finds

that this agreement is no less complex than the one at issue in Winston. Accordingly, the fourth

Winston factor tips against enforcement of the settlement agreement.

### E.  Summary

Two of the Winston factors tip against enforcement of the settlement agreement, one is

neutral with respect to enforcement, and one favors enforcement. As discussed above, the first

Winston factor, which asks whether the parties expressly reserved the right not to be bound in the

absence of a writing, tips against enforcement. Because this factor is typically considered the

most important of the four, see RKG Holdings, Inc., 182 F.3d at 901, and because only one factor

militates against enforcement, the Court must deny enforcement of the settlement agreement.[3]

## IV.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Settlement Motion (Dkt. No. 64) is **DENIED**; and it is

further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and

Order on all parties in accordance with the Local Rules.

---

[3] In her Response, Defendant argues that Schaaf, her lawyer during the settlement
negotiations, did not have authority to enter into the settlement agreement. Resp. at 2–3. Plaintiff
disputes this. Settlement Mot. at 10–12; Reply at 1–4. Because the Court finds that the settlement
agreement purportedly reached by the parties is unenforceable, it need not reach the question
whether Defendant's lawyer was authorized to assent to the settlement on her behalf.

**IT IS SO ORDERED.**


DATED:          September 20, 2016
                Albany, New York


Lawrence E. Kahn
U.S. District Judge