UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

H&R BLOCK TAX SERVICES, LLC,

                              Plaintiff,

          -against-                                    1:15-CV-0085 (LEK/CFH)

JUDY STRAUSS,

                              Defendant.

_____

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Plaintiff H&R Block Tax Services, LLC commenced this breach of contract action

against Defendant Judy Strauss. Dkt. Nos. 1 ("Complaint"), 52 ("Amended Complaint").

Presently before the Court are Plaintiff's Motion to Dismiss Defendant's counterclaim, Plaintiff's

Motion to Strike Defendant's first and second affirmative defenses, and Defendant's Motion to

Amend her pleading. Dkt. Nos. 32 ("Motion to Dismiss"), 33 ("Motion to Strike"), 92 ("Motion

to Amend"). Defendant opposes Plaintiff's Motions, Dkt. Nos. 36 ("Response to Motion to

Strike"), 37 ("Response to Motion to Dismiss"), 90 ("Supplemental Response"), and Plaintiff

filed replies, Dkt. Nos. 38 ("Counterclaim Reply"), 39 ("Affirmative Defenses Reply"), 91

("Supplemental Reply"). Plaintiff also opposes Defendant's Motion to Amend. Dkt. No. 97

("Response to Motion to Amend"). For the following reasons, Plaintiff's Motions are granted

and Defendant's Motion is denied.

## II.   BACKGROUND

For many years, Plaintiff, a "Missouri limited liability company with its principal place of

business [in] Kansas City, Missouri," has engaged "in the business of licensing others to operate

tax return preparation offices under the H&R Block service mark." Am. Compl. ¶ 5. In

September 1984, Defendant, a citizen and resident of New York, id. ¶ 6, entered into a Satellite

Franchise Agreement (the "SFA") with Plaintiff's predecessor-in-interest[1] to enable Defendant to

operate a tax return preparation office in Cobleskill, New York under the H&R Block service

mark, id. ¶ 1. The SFA automatically renewed every five years, and the parties continued their

contractual relationship until 2014. Id. ¶ 2; Dkt. No. 52-1 ("Satellite Franchise Agreement") ¶ 4.

This renewal provision read as follows:

> The initial term of this Agreement begins on the date hereof and ends
> five years after such date, unless sooner terminated by Block [for
> cause]. Unless Franchisee is in default hereunder or under any
> agreement with or obligation to Block or any subsidiary or affiliate of
> Block, this Agreement shall be automatically renewed for successive
> Renewal Terms. Franchisee may terminate this Agreement effective
> at the end of the initial term or any Renewal Term, but only upon at
> least 120 days written notice to Block prior to the end of such term.

SFA ¶ 4. The SFA also provided that, for one year after the discontinuance of the agreement,

Defendant would be forbidden from soliciting clients of her former H&R Block office and could

not compete in the tax preparation business with Plaintiff in or within forty-five miles of

Cobleskill, New York. Am. Compl. ¶ 9; SFA ¶ 12(a). This provision of the SFA stated that:

> for a period of one year after the termination of this Agreement or the
> transfer or other disposition of this franchise, [Franchisee] will
> not . . . solicit . . . or divert from Block or Block franchisees any
> person for whom Franchisee prepared a tax return or performed
> Related Services or Additional Services at any time during the term
> of this Agreement; and . . . [Franchisee] will not compete . . . with
> Block or Block franchisees in the business of preparing tax returns or
> performing Related Services or Additional Services in or within 45
> miles of the Franchise Territory [Cobleskill, New York].

---

[1]  The succession of rights and liabilities under the SFA is not in dispute.

SFA ¶ 12(a). Despite this language, in her Amended Answer, Defendant asserts that "[t]here is, essentially, no geographic limitation on the exclusion zone." Dkt. No. 55 ("Amended Answer") ¶ 26. Finally, the SFA contained a choice-of-law clause stating that Missouri law would govern interpretation of the agreement. SFA ¶ 25.

Before the expiration of the most recent five-year term, Plaintiff informed Defendant that it would not be renewing the 1984 version of the SFA; instead, Plaintiff offered Defendant a "current form" of the franchise agreement. Am. Compl. ¶ 2. Defendant declined to renew the SFA in its current form, and the franchise relationship ended on September 1, 2014. Id. ¶¶ 2, 12. Plaintiff alleges that Defendant failed to comply with the noncompete and nonsolicitation agreements contained in the SFA. Id. ¶ 14. In particular, Plaintiff claims that Defendant "continued to operate a tax return preparation business at her formerly franchised location under the name J. STRAUSS & ASSOCIATES BOOKKEEPING & TAX SERVICE." Id. ¶ 14. According to the Amended Complaint, Defendant also "ran print advertising directed at clients of her former H&R BLOCK franchise indicating that she would be continuing to provide tax return preparation services at her formerly franchised location." Id. ¶ 15.

In her Amended Answer, Defendant asserts four affirmative defenses: (1) equity forbids granting the relief sought by Plaintiff because Plaintiff has unclean hands, having "wrongly and unlawfully terminated the franchise agreement," Am. Answer ¶ 21, (2) the noncompete clause is unenforceable because of its allegedly unlimited geographical scope, id. ¶ 27, (3) the noncompete clause "serves no legitimate interest of the Plaintiff, and is unduly burdensome to the Defendant," id. ¶ 29, and (4) the parties had established a "course of conduct and dealing" that, combined with the language in the SFA, forbade Plaintiff from "unilaterally refusing to renew"

the agreement, id. ¶ 36. Moreover, Defendant brings a counterclaim against Plaintiff, alleging that Plaintiff's "refus[al] to honor the automatic renewal provision of the 1984 contract" constituted a breach of contract. Id. ¶ 39.

After this Court entered a preliminary injunction and temporary restraining order against Defendant on February 4, 2015, Dkt. No. 20 ("February Decision"), Plaintiff moved to dismiss Defendant's counterclaim and to strike two of Defendant's affirmative defenses, Mot. to Dismiss, Mot. to Strike. Plaintiff argues that the counterclaim "fails as a matter of law because Block was legally entitled to decline to renew [Defendant's] agreement." Dkt. No. 32-1 ("Plaintiff's Motion to Dismiss Memorandum") at 1. For the same reason, Plaintiff asks the Court to strike Defendant's "unclean hands" defense. Dkt. No. 33-1 (Plaintiff's Motion to Strike Memorandum") at 1. Plaintiff also asks the Court to strike Defendant's affirmative defense relating to the covenants against competition on the ground that those covenants are reasonable and enforceable. Id. at 5. Defendant responded to these motions. Resp. to MTS, Resp. to MTD.

On September 20, 2016, the Court denied Plaintiff's Motion to Enforce a settlement agreement purportedly reached between the parties. Dkt. Nos. 64 ("Motion to Enforce Settlement"), 83 ("September Order"). Later, after receiving permission from the Court, Dkt. Nos. 88, 89, Defendant filed supplemental briefing in support of her opposition to Plaintiff's motions to dismiss and strike her counterclaim and affirmative defenses. Suppl. Resp. In this supplemental filing, Defendant withdraws her second affirmative defense relating to the geographical scope of the covenants, id. at 13, in addition to arguing that the choice-of-law provision in the SFA is unenforceable because New York law governs construction of the agreement, id. at 8–9. Moreover, for the first time, Defendant asserts that the covenants in the

SFA are unenforceable because they are triggered only after termination of the agreement, and what happened here is that the agreement expired rather than terminated. Id. at 2. Plaintiff filed a response to this supplemental briefing. Suppl. Reply.

Finally, Defendant moved to amend her Amended Answer by adding a counterclaim and affirmative defense. Mot. to Amend; Dkt. No. 92-1 ("Amendment Memorandum"). The proposed counterclaim is that Plaintiff is liable for breach of contract and breach of the implied covenant of good faith and fair dealing for attempting to enforce the covenants against solicitation and competition in the SFA even though Plaintiff knew that they were not triggered by the expiration of the agreement. Amendment Mem. at 15–17. Defendant's proposed affirmative defense is that Plaintiff has unclean hands because it is liable for the conduct complained of in the proposed counterclaim. Id. at 17–20. Plaintiff responded to the Motion to Amend. Resp. to MTA.

## III.    LEGAL STANDARDS

### A.  Motion to Dismiss a Counterclaim

 "A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint [under Federal Rule of Civil Procedure 12(b)(6)]." Revonate Mfg., LLC v. Acer Am. Corp., No. 12-CV-6017, 2013 WL 342922, at *2 (S.D.N.Y. Jan. 18, 2013) (quoting Netrix Leasing, LLC v. K.S. Telecom, Inc., No. 00-CV-3375, 2001 WL 228362, at *8 (S.D.N.Y. Mar. 7, 2011)). To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A

court must accept as true the factual allegations contained in an answer and counterclaim and draw all inferences in favor of the defendant. Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). Plausibility, however, requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. The plausibility standard "asks for more than a sheer possibility that a [plaintiff] has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. Id. at 678–79.

### B. Motion to Strike

Under Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A "motion to strike an affirmative defense . . . for legal insufficiency is not favored and will not be granted 'unless it appears to a certainty that plaintiff[] would succeed despite any state of the facts which could be proved in support of the defense.'" William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp., 744 F.2d 935, 939 (2d Cir. 1984) (quoting Durham Indus., Inc. v. N. River Ins. Co., 482 F. Supp. 910, 913 (S.D.N.Y. 1979)), vacated on other grounds, 478 U.S. 1015 (1986). Thus, a court will strike an affirmative defense when the plaintiff shows that "(1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense." SEC v. McCaskey, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999). With respect to the prejudice prong of the test, "[w]hen 'the defense is insufficient as a

6

matter of law, the defense should be stricken to eliminate the delay and unnecessary expense from litigating the invalid claim.'" Estee Lauder, Inc. v. Fragrance Counter, Inc., 189 F.R.D. 269, 272 (S.D.N.Y. 1999) (quoting FDIC v. Eckert Seamans Cherin & Mellott, 754 F. Supp. 22, 23 (E.D.N.Y. 1990)). "The standard for striking an affirmative defense is the mirror image of the standard for considering whether to dismiss for failure to state a claim." Solvent Chem. Co. ICC Indus., Inc. v. E.I. Dupont De Nemours & Co., 242 F. Supp. 2d 196, 212 (W.D.N.Y. 2002).

### C. Motion to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure states that a court should "freely give leave [to amend a pleading] when justice so requires." A district court has discretion as to whether to permit amendment of a pleading. See Holmes v. Grubman, 568 F.3d 329, 334 (2d Cir. 2009) ("We review a District Court's denial of leave to amend for abuse of discretion."). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007). But "a party will [generally] be permitted to amend its pleading unless the proposed amendment would be futile." Steele v. Paypal, Inc., No. 05-CV-1720, 2006 WL 3612852, at *1 (E.D.N.Y. Dec. 11, 2006). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to [Rule 12(b)(6)]." Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002).

## IV. DISCUSSION

### A. The Motion to Dismiss the Counterclaim

In her Amended Answer, Defendant brings a counterclaim for breach of contract, alleging

that Plaintiff had violated the SFA[2] by refusing to renew the franchise agreement in 2014. Am. Answer ¶¶ 38–51. Plaintiff seeks to dismiss this counterclaim on the ground that the SFA is governed by Missouri law, under which it is well established that "automatic renewal provisions, such as the one at issue here, must be construed to allow either party to elect not to renew the agreement at the end of any term." Pl.'s MTD Mem. at 1.

The SFA contains a choice-of-law clause stating that "this Agreement shall be subject to and construed by the laws of the State of Missouri unless any rule of law or public policy of the state in which the Franchise Territory is located requires that all or a specific provision hereof be governed by the laws of such state." SFA ¶ 25. The threshold question is whether this clause is enforceable. Before undertaking the choice-of-law analysis, however, the Court will discuss whether, under Missouri law, Plaintiff breached the SFA by deciding not to renew the agreement in 2014.

### 1. The SFA's Renewal Clause under Missouri Law

As noted above, the SFA contains a renewal clause that reads as follows:

> The initial term of this Agreement begins on the date hereof and ends five years after such date, unless sooner terminated by Block [for cause]. Unless Franchisee is in default hereunder or under any

---

[2]  Although Defendant does not attach the SFA to any of her pleadings, the Court will consider the version of it attached to Plaintiff's Amended Complaint, since the SFA—the contract around which this dispute revolves—is clearly integral to Defendant's counterclaims, and Defendant does not dispute its relevance or authenticity. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) ("Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006))); Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) ("[E]ven if a document is 'integral' to the [pleading], it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. . . . It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.").

> agreement with or obligation to Block or any subsidiary or affiliate of
> Block, this Agreement shall be automatically renewed for successive
> Renewal Terms. Franchisee may terminate this Agreement effective
> at the end of the initial term or any Renewal Term, but only upon at
> least 120 days written notice to Block prior to the end of such term.

SFA ¶ 4. The question is whether the renewal provision allows Plaintiff to elect not to renew the agreement at the end of a term without cause. Assuming that Missouri law governs the SFA, the answer is yes.

Generally, "[a] federal court sitting in diversity must look to the highest state court for guidance on the interpretation of state law." NAP, Inc. v. Shuttletex, Inc., 112 F. Supp. 2d 369, 377 (S.D.N.Y. 2000). If the state's highest court has not provided relevant guidance, the court is "bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion." V.S. v. Muhammad, 595 F.3d 426, 432 (2d Cir. 2010). But "[w]here . . . a question of state law has not been conclusively resolved by those [state] courts, our general practice is to look next to the law of the circuit in which the state is located." Casey v. Merck & Co., Inc., 653 F.3d 95, 100 (2d Cir. 2011) (citing Factors Etc., Inc. v. Pro Arts, Inc., 652 F.2d 278, 283 (2d Cir. 1981)).[3] A court may disregard a pronouncement on an unclear area of state law offered by the relevant federal court of appeals only if it believes that "the holding ha[s] been superseded by a later pronouncement from state legislative or judicial sources, or that prior state court decisions ha[ve] been inadvertently overlooked by the . . . court of appeals." Factors, 652 F.2d at 283.

---

[3] At least one district court has sharply criticized the reasoning behind Factors. AIU Ins. Co. v. TIG Ins. Co., 934 F. Supp. 2d 594, 604–06 (S.D.N.Y. 2013). The Court largely agrees with the analysis provided by the AIU Insurance court. But even that court concluded that, despite its reservations, it was bound by the Factors holding. Id. at 606. This Court is similarly bound.

In H & R Block Tax Servs. LLC v. Franklin, 691 F.3d 941, 942 (8th Cir. 2012), the

Eighth Circuit, which encompasses Missouri, faced the question whether, under Missouri law, a

renewal provision that is substantively identical to the one at issue in this case gave H&R Block

the right not to renew two franchise agreements without cause. The court noted that the Missouri

Supreme Court "ha[d] made clear that, to be enforceable, a contract which purports to run in

perpetuity must be adamantly clear that this is the parties' intent." Id. at 944 (quoting Preferred

Physicians Mut. Mgmt. Grp., Inc. v. Preferred Physicians Mut. Risk Retention Grp., Inc., 961

S.W.2d 100, 103 (Mo. Ct. App. 1998)). Thus, the question for the court was whether the renewal

provision "unequivocally express[ed] the parties' intent that the agreements be perpetually

enforceable." Id. The court did not point to any Missouri state-court decisions conclusively

resolving this question, and indeed the dissent quarreled with the majority's reading of several

Missouri cases. Id. at 947–48 (Smith, J., dissenting). Instead, the court relied on its finding that

"the only Missouri case where [an unequivocal expression of an intent to make a perpetually

enforceable agreement was found] analyzed a contract with the word 'perpetually' in the

agreement." Id. at 945 (citing Blackmore v. Boardman, 28 Mo. 420, 1859 WL 6632, at *1 (Mo.

1859)). The renewal provision in the franchise agreement lacked that kind of express language,

and its provision for automatic renewal suggested that the parties did not intend to create a

perpetually enforceable agreement. Id. The court therefore concluded that the contract failed to

unequivocally convey the parties' intent to form a perpetually enforceable agreement. Id. On that

basis, H&R Block was entitled to decline to renew the contract at the end of the term with or

without cause. Id.

Accordingly, the Eighth Circuit has held that, under Missouri law, a substantively identical version of the renewal provision in this case does not create a perpetually enforceable contract. Id. This result was not clearly dictated by Missouri law, but there is no indication that the Eighth Circuit's holding has been superseded by later developments in Missouri law, and there is no reason to think that holding ignored relevant precedent. Thus, if Missouri law were held to govern interpretation of the SFA, this Court would be bound by the Eighth Circuit's interpretation of the substantively identical renewal clause in H & R Block. Under that interpretation, Plaintiff would be entitled to decline to renew the SFA at the end of any term without cause, and therefore Defendant's counterclaim alleging breach of contract would have to be dismissed. But the Court cannot make that holding until it decides whether Missouri law governs interpretation of the SFA. The Court now turns to that question.

### 2. Choice of Law

"When a federal district court sits in diversity, it generally applies the law of the state in which it[] sits, including that state's choice of law rules." In re Coudert Bros. LLP, 673 F.3d 180, 186 (2d Cir. 2012) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941)). Under New York choice-of-law principles, courts typically "enforce a choice-of-law clause so long as the chosen law bears a reasonable relationship to the parties or the transaction." Welsbach Elec. Corp. v. MasTec N. Am., Inc., 859 N.E.2d 498, 500 (N.Y. 2006). But courts will not enforce a choice-of-law provision "where the chosen law violates 'some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal.'" Id. at 501 (quoting Cooney v. Osgood Mach., 612 N.E.2d 277, 284 (N.Y. 1993)). The public policy exception, however, does not apply unless the chosen law is "truly obnoxious," Cooney,

612 N.E.2d at 285, and it is not enough to show that New York law differs from the chosen law, Finucane v. Interior Const. Corp., 695 N.Y.S.2d 322, 325 (App. Div. 1999) (citing Loucks v. Standard Oil Co., 120 N.E. 198 (N.Y. 1918)); accord Hamilton v. Accu-Tek, 47 F. Supp. 2d 330, 337 (E.D.N.Y. 1999) ("Public policy exceptions are reserved for those rare cases in which choice of a foreign jurisdiction's law would be deeply abhorrent from the point of view of fundamental New York policy.").

Plaintiff's principal place of business is in Kansas City, Missouri. Am. Compl. ¶ 5. That alone is enough to create a reasonable relationship between Missouri law and the parties. See, e.g., Bleecker v. Zetian Sys., Inc., No. 12-CV-2151, 2013 WL 5951162, at *5 (S.D.N.Y. Nov. 1, 2013) ("A principal place of business is sufficient to establish a reasonable relationship between the parties and the state."); Follmand v. World Fin. Network Nat'l Bank, 721 F. Supp. 2d 158, 161 (E.D.N.Y. 2010) ("Here, because defendant's principal place of business is in Ohio, and defendant's cardholder agreement instructs that Ohio law governs the agreement, its choice-of-law provision will be enforced."); DCMR v. Trident Precision Mfg., 317 F. Supp. 2d 220, 225 (W.D.N.Y. 2004) ("[A]s defendant has its principal place of business in Webster, New York, there is a reasonable basis for choosing New York law to control."); Finucane, 695 N.Y.S.2d at 325 ("The parties, in agreeing to have the laws of Oklahoma govern their contract, selected the laws of a State that has a reasonable relationship to the contract since [one of the parties'] principal place of business is located in Oklahoma."). The only question, then, is

whether enforcement of Missouri law here offends a deeply rooted public policy of New York law.[4]

Defendant bears the "heavy burden" of showing that the relevant Missouri law offends a fundamental policy of New York law. Schultz v. Boy Scouts of Am., Inc., 480 N.E.2d 679, 688 (N.Y. 1985).[5] As noted above, under the Eighth Circuit's interpretation of Missouri law, which is binding on the Court here, the SFA is not a perpetual contract, and Plaintiff may decline to renew the agreement at the end of a term without cause. The reason is that Missouri law strongly disfavors the enforcement of perpetual contracts, and so "a contract which purports to run in perpetuity must be adamantly clear that this is the parties' intent." H & R Block, 691 F.3d at 944 (quoting Preferred Physicians, 961 S.W.2d at 103). Since the Eighth Circuit read a renewal clause that is substantively identical to the one in this case as *not* clearly expressing an intent to create an perpetual contract, Missouri law would allow Plaintiff to decide not to renew the agreement at the end of any term without cause.

─────────────────────

    [4] Defendant argues that New York law requires this Court to determine the law governing interpretation of the SFA by ascertaining which state has the most significant contacts with the case. Resp. to MTD at 2–3. Defendant relies primarily on Haag v. Barnes, 175 N.E.2d 441 (N.Y. 1961), to support this position. That reliance is misplaced. While the New York Court of Appeals has never explicitly overruled Haag, it has since adopted the approach to choice-of-law provisions discussed above, Weisbach, 859 N.E.2d at 500, and lower New York state courts have followed suit, e.g., Friedman v. Roman, 885 N.Y.S.2d 740, 741 (App. Div. 2009). Moreover, in Armarine Brokerage, Inc. v. OneBeacon Ins. Co., 307 F. App'x 562, 564 (2d Cir. 2009), the Second Circuit vacated the judgment of the district court because it had mistakenly applied the very "center of gravity" approach to contractual choice-of-law provisions advocated by Defendant in this case.

    [5] The Court assumes, without deciding, that "New York's nexus with the case is substantial enough to threaten our public policy," which is a prerequisite for application of the public policy exception. Cooney, 595 N.Y.S.2d at 926.

New York law takes a similarly dim view of perpetual contracts: "Unless a contract expressly provides for perpetual performance, the 'law will not imply that a contract calling for continuing performance is perpetual in duration.'" Better Living Now, Inc. v. Image Too, Inc., 889 N.Y.S.2d 653, 655 (App. Div. 2009) (quoting Haines v. City of New York, 364 N.E.2d 820, 822 (N.Y. 1977)). But there is a twist. New York law distinguishes between perpetual contracts, which are strongly disfavored, and indefinite contracts, which should be enforced as is. Nicholas Labs. Ltd. v. Almay, Inc., 723 F. Supp. 1015, 1018 (S.D.N.Y. 1989). In an indefinite contract, "the parties, while providing no fixed 'date for the termination of the promisor's obligation . . . condition the obligation upon an event which would necessarily terminate the contract.'" Payroll Express Corp. v. Aetna Cas. & Sur. Co., 659 F.2d 285, 292 (2d Cir. 1981) (quoting Warner-Lambert Pharm Co. v. John J. Reynolds, Inc., 178 F. Supp. 655, 661 (S.D.N.Y. 1959)); accord Lane's Floor Covering v. Shaw Indus., No. 97-CV-4596, 1999 WL 11552, at *1 (S.D.N.Y. Jan. 13, 1999) ("An indefinite contract . . . contains provisions under which the contract may terminate at any time."). "Thus[,] where termination has been provided for in the contract, even if continuous performance is a possibility, courts should not refuse to enforce such contracts or read into them different conditions of termination." Nicholas Labs., 723 F. Supp. at 1018. In such a case, there is simply "no need to invoke the presumption against construing contracts as 'perpetual,' a term which "serves only to confuse.'" Payroll Express, 659 F.2d 285, 292 (quoting Warner-Lambert, 178 F. Supp. at 661).

The SFA is arguably an indefinite contract. It does not set a date on which either party's obligations must cease regardless of any actions they take. But its renewal clause provides, among other things, that "[u]nless Franchisee is in default hereunder or under any agreement

14

with or obligation to Block or any subsidiary or affiliate of Block, this Agreement shall be automatically renewed for successive Renewal Terms." SFA ¶ 2. The agreement would therefore "necessarily terminate" if Defendant defaulted under it or any other agreement with Plaintiff or one of its affiliates. Payroll Express, 659 F.2d at 292 (quoting Warner-Lambert, 178 F. Supp. at 661). In other words, the agreement could last indefinitely, but if default occurred, it would end. So under New York law, the SFA would probably not be subject to the presumption against perpetuity, and therefore its renewal clause would likely be read to forbid Plaintiff from choosing not to renew without cause.

Accordingly, Missouri law differs from New York law. However, that alone is not enough to demonstrate that application of Missouri law here would violate "some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal." Cooney, 612 N.E.2d at 284. Defendant fails to point to any case even remotely suggesting that enforcing the distinction between perpetual contracts and indefinite contracts is a fundamental policy of New York law. Indeed, the Court's research suggests that there is a dearth of New York state case law on this topic. Defendant has therefore not come close to satisfying its "heavy burden" of showing that the relevant Missouri law offends a fundamental policy of New York law. Schultz, 65 N.Y.S.2d at 99.

This conclusion is buttressed by Weisbach, a New York Court of Appeals decision that illustrates the difficulty of establishing the public policy exception. There, the court confronted a contract between a contractor and a subcontractor that contained a choice-of-law clause specifying that Florida law would govern interpretation of the contract. Weisbach, 825 N.Y.S.2d at 693. Florida law allowed "pay-if-paid" contracts, in which "the subcontractor will not be paid

unless the contractor has been paid." Id. But New York law forbade such contracts in a statutory provision that deemed such contracts "void as against public policy." Id. The issue was whether the choice-of-law clause was unenforceable because of New York's policy against pay-if-paid contracts. Id. Even though the relevant New York statute described pay-if-paid contracts as against public policy, the court found that the public policy exception was inapplicable, reasoning that the history of New York law's treatment of such contracts failed to establish a fundamental policy against them. Id. at 695–97.

Here, as just noted, the Court cannot locate any statement from New York courts or the New York legislature suggesting that New York law regards the distinction between perpetual contracts and indefinite contracts as expressing a fundamental public policy. Indeed, unlike in Weisbach, here there is no clear indication that New York law, which is in accord with Missouri law in generally disfavoring perpetual contracts, expresses a policy in favor of policing the distinction between perpetual and indefinite contracts. Thus, because "[w]e are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home," Loucks, 120 N.E. at 111, the Court finds that the public policy exception does not bar enforcement of the parties' choice-of-law clause. And since the choice-of-law provision selects Missouri law, and Missouri law (as interpreted by the Eighth Circuit) allows Plaintiff to choose not to renew the agreement at the end of a term without cause, the Court also holds that Plaintiff did not breach the agreement by electing not to renew in 2014. Accordingly, Defendant's counterclaim relating to breach of contract must be dismissed.

**B. The Motion to Strike the Affirmative Defenses**

As noted above, Defendant has withdrawn her second affirmative defense relating to the geographical scope of the covenants. Supplemental Resp. at 13. That was one of the two affirmative defenses Plaintiff moved to dismiss, the other being the affirmative defense alleging that Plaintiff has unclean hands because it wrongfully ended the franchise agreement. Pl.'s MTS Mem. at 1.

The doctrine of unclean hands is "an affirmative defense [that] must be asserted in a responsive pleading." Ferguson v. Strutton, 302 S.W.3d 239, 245 (Mo. Ct. App. 2009). The rationale behind the doctrine is that someone "who has engaged in inequitable activity regarding the very matter for which he seeks relief will find his action barred by his own misconduct." Guzzardo v. City Grp., 910 S.W.2d 314, 317 (Mo. Ct. App. 1995) (quoting Warren v. Warren, 784 S.W.2d 247, 254 (Mo. Ct. App. 1989)). Here, Defendant's unclean hands argument depends on a showing that Plaintiff breached the SFA by ending it without cause. The Court has just held that Plaintiff did not breach the agreement when it elected not to renew it without cause. Accordingly, "there is no question of fact which might allow the defense to succeed," McCaskey, 56 F. Supp. 2d at 326, and so the Court will strike it, cf. Forms Mfg., Inc. v. Edwards, 705 S.W.2d 67, 70 (Mo. Ct. App. 1985) ("[T]he trial court reasonably could have found that company was not entitled either to an injunction or to damages for employee's alleged breach of the restrictive covenant not to compete because of its own prior breach of the employment contract[, which gave it unclean hands].").

### C. The Motion to Amend Defendant's Amended Answer

Defendant seeks leave of the Court to add a counterclaim alleging that Plaintiff is liable for breach of contract and of the covenant of good faith and fair dealing. Amendment Mem. at 15–17. Defendant further asks the Court for permission to add an affirmative defense stemming from Plaintiff's unclean hands, and that defense is also premised on breach of contract and of the covenant of good faith and fair dealing. Id. at 17–20. According to Defendant, Plaintiff committed these breaches by attempting to enforce several of the SFA's covenants despite its knowledge that they were triggered only by termination of the SFA and that the SFA did not in fact terminate. Id. at 15. Instead, the SFA expired when Plaintiff refused to renew it in 2014, and since expiration did not trigger the covenants, Plaintiff never had the right to enforce them. Id.

At the outset, the Court could deny Defendant's Motion to Amend on the ground that it fails to comply with Local Rule 7.1(a)(4), which sets forth the procedure for filing a motion to amend a pleading in this district. Under the rule, "the proposed amended pleading must be a complete pleading, which will supersede the pleading sought to be amended in all respects," and "[a] party shall not incorporate any portion of its prior pleading into the proposed amended pleading by reference." L.R. 7.1(a)(4). Here, Defendant did not file a complete pleading, instead submitting an attachment setting out her proposed counterclaim and affirmative defense without including the other components of an answer. See Amendment Mem. Defendant also appears to have incorporated by reference the assertions made in her earlier answer, id. at 15, 17, which is forbidden by the Local Rule.

Even if the Court ignored Defendant's blatant violation of the Local Rules, it would deny the Motion to Amend as futile. The relevant provision of the SFA states that the covenants

18

at issue are triggered by "the termination of this Agreement or the transfer or other disposition of this franchise." SFA ¶ 12(a). Plaintiff argues that "or other disposition" functions as a catch-all provision triggering the covenants "whenever and however the parties ended their relationship." Supplemental Reply at 12. In the alternative, Plaintiff argues that "termination" as used in the relevant provision of the SFA "was intended to include not only termination of the agreement for cause, but also termination of the agreement resulting from expiration and nonrenewal." Id. at 13. The Court need not reach the second argument because it finds that Plaintiff's decision not to renew the SFA falls under the "or other disposition" provision of the agreement.

Under Missouri law, "[t]he intent of the parties [to a contract] is presumed to be expressed by the natural and ordinary meaning of the language in the contract." Parker v. Pulitzer Pub. Co., 882 S.W.2d 245, 249 (Mo. Ct. App. 1994). Under the principle of ejusdem generis, "when words of general description are used in connection with a specific enumeration of articles, the general description will include only articles similar to those specifically mentioned." Clean Uniform Co. St. Louis v. Magic Touch Cleaning, Inc., 300 S.W.3d 602, 610 (Mo. Ct. App. 2009) (quoting West v. Nichols, 227 S.W.2d 760, 762 (Mo. Ct. App. 1950)). Applying this principle, the Court must interpret the phrase "or other disposition" in light of the specific terms that precede it, namely, "the termination of this Agreement or the transfer . . . of this franchise." SFA ¶ 12(a).

Plaintiff's decision to let the agreement expire is sufficiently similar to a termination that it makes sense to characterize it as falling under the "or other disposition" provision. A "termination" can mean either "[t]he act of ending something" or "[t]he end of something in time or existence; conclusion or discontinuance." Termination, Black's Law Dictionary (10th ed.

2014). A disposition can mean "[a] final settlement or determination." <u>Disposition</u>, Black's Law Dictionary (10th ed. 2014). Plaintiff refused to renew the SFA, thereby bringing to an end the agreement between the parties. So the ordinary meaning of termination appears broad enough to encompass the kind of expiration that happened in this case. <u>Cf.</u> <u>Clean Uniform Co.</u>, 300 S.W.3d at 610 ("Neither of the specifically-enumerated events in paragraph 9 [of the agreement], strikes and lockouts, are similar in nature to the [party's] non-renewal of its contract with the defendant."). Moreover, the expiration here is plausibly likened to a final determination of the contractual relationship between the parties, so that it fits within the phrase "other disposition." But the Court need not decide that termination in fact includes expiration, since it is enough that "other disposition," if read to encompass the expiration at issue here, "include[s] only articles similar to [termination]." <u>Id.</u> at 610 (quoting <u>West</u>, 227 S.W.2d at 762).

The other specific term that precedes "or other disposition" is "transfer," SFA ¶ 12(a), which is defined in the SFA as "any direct or indirect transfer (by gift or otherwise), assignment, lease or other disposition of Franchisee's interest under this agreement," <u>id.</u> ¶ 1. What "transfer" and "termination" have in common in this context is that both would entail the cessation of the relationship between Plaintiff and Defendant. The SFA provides that if the franchisee transfers her interest "as permitted herein, all rights of Franchisee shall terminate." <u>Id.</u> ¶ 14. The effect of Defendant's decision not to renew the agreement was to end the contractual relationship between the parties. Thus, "or other disposition," when read together with the terms preceding it, covers situations in which the contractual relationship between the parties comes to an end. And

Plaintiff's election not to renew the agreement, which effectively ended the franchise relationship between the parties, comports with that understanding of the phrase.[6]

Thus, the SFA makes clear that the relevant covenants could be triggered by an event like Plaintiff's decision not to renew the agreement in 2014 without cause. Since it would be futile to allow amendment of Defendant's pleading to include a counterclaim and affirmative defense premised on the argument that the covenants were not triggered by Plaintiff's decision not to renew, the Court must deny Defendant's Motion to Amend.[7]

## V.     CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Motion to Dismiss Defendant's counterclaim (Dkt. No. 32) is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Motion to Strike Defendant's first two affirmative defenses (Dkt. No. 33) is **GRANTED**; and it is further

---

[6] Defendant argues that "or other disposition" cannot serve as a catch-all phrase covering Plaintiff's conduct in this case because, as the Court just noted, the SFA elsewhere defines "transfer" as "any direct or indirect transfer (by gift or otherwise), assignment, lease or other disposition of Franchisee's interest under this agreement." SFA ¶ 1; Amendment Mem. at 5. The Court disagrees. In the definition of "transfer," the phrase "or other disposition" is followed by "of Franchisee's interest under this agreement." SFA ¶ 1. But in the renewal clause, "or other disposition" is followed by "of this franchise." Id. ¶ 12(a). This difference suggests that the two uses of the phrase have different purposes. To read them as carrying the same meaning would be to render the differing language superfluous, something disfavored by Missouri contract law. See Foley Co. v. Walnut Assocs., 597 S.W.2d 685, 689 (Mo. Ct. App. 1980) (adopting "the principle that an interpretation is negated which renders a provision of the agreement superfluous").

[7] To the extent that Plaintiff seeks attorneys' fees pursuant to 28 U.S.C. § 1927, e.g., Resp. to Mot. to Amend at 11–12, that request is denied.

**ORDERED**, that Defendant's Motion to Amend her Amended Answer (Dkt. No. 92) is

**DENIED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      January 27, 2017
                  Albany, New York

                         Lawrence E. Kahn
                         U.S. District Judge